# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:09-CV-39

**DOUGLAS BASSETT, on Behalf of Himself**
**and the Group He Seeks to Represent**                                           **PLAINTIFF**

**v.**

**TENNESSEE VALLEY AUTHORITY**                                             **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff's Motion for Conditional Certification of an FLSA Collective Action (Docket #20) and Defendant's Motion for Summary Judgment (Docket #21). Plaintiff has responded and replied (Docket #25, 28). Defendant has responded and replied (Docket #24, 32). Defendant has also filed a sur-reply (Docket #33). This matter is now ripe for adjudication. For the following reasons, Plaintiff's motion is GRANTED IN PART and DENIED IN PART, and Defendant's motion is DENIED.

## BACKGROUND

Plaintiff Douglas Bassett worked as a dredging crew heavy equipment operator for Defendant Tennessee Valley Authority from November 14, 1987 to January 4, 2008. Plaintiff worked out of Paducah, Kentucky, but his job also required travel to different locations. For actual hours worked at remote locations, heavy equipment operators were paid overtime. According to Defendant, Plaintiff and other heavy equipment operators were compensated by Defendant for the hours spent traveling to and from those work sites, and they were also given a per diem amount for each day they worked on location and a per diem if they chose to remain at the remote site on their days off. If a heavy equipment operator chose to travel away from the remote work site on a day off, Defendant provided no per diem or compensation for what

Defendant considered "voluntary travel time."

Plaintiff was a member of the International Unit of Operating Engineers, and therefore covered by the General Agreement and Supplementary Schedules Between Tennessee Valley Authority and the Trades and Labor Council for Annual Employees of the Tennessee Valley Authority ("General Agreement"). The General Agreement states as follows in regards to travel time:

> A. Time spent in travel by an employee when required to travel between his/her official station and a field assignment is paid for as follows:
>
> 1. An employee required to travel during regular bulletined hours is paid at the rate he/she would have received if he/she had worked those hours.
>
> 2. An employee required to travel outside of regular bulletined hours of work and on scheduled rest days is paid for time spent in travel at the applicable overtime rate, except that when Pullman sleeping accommodations are provided, payment is not made for more than eight hours' travel time in a calendar day nor between the hours of 7 p.m. and 8 a.m. . . .
>
> 3. The travel time paid for is limited to the time reasonably required to make the trip from one work location to the next work location by the most direct route by the means provided by TVA. For travel by automobile outside of regular bulletined hours, the maximum travel time paid for is computed by allowing time on the basis of a half hour for each 20 miles of travel or major fraction thereof.
>
> 4. An employee whose place of abode is closer to a field assignment than is his/her official station and who travels daily from his/her place of abode to a field assignment is not entitled to pay for time spent in travel.

General Agreement, 56. Regular bulletined hours are not to exceed eight consecutive hours or more than forty hours in any calendar week. General Agreement, 32.

Plaintiff has sued Defendant to recover compensation for time spent in travel on his days off. Plaintiff would travel home on the weekends when he was working at a remote site. He was compensated for his mileage to travel home and back to the work site, but not for the time spent

in travel. Plaintiff alleges in his complaint that Defendant "intentionally and repeatedly misrepresented the availability of compensation for travel outside bulletined hours to its employees and sought to avoid inquiry by employees regarding their entitlement to monies owed to them."

Plaintiff filed a Motion for Conditional Certification of an FLSA Collective Action. Defendant responded to this motion and also filed a Motion for Summary Judgment. In the interests of judicial economy, the Court will consider Defendant's pending motion for summary judgment before it considers Plaintiff's motion.

## DISCUSSION

### I. Motion for Summary Judgment

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

The Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., requires employers to pay overtime to employees who work in excess of a forty hour workweek. 29 U.S.C. § 207(a)(1). However, employers are generally not liable for employees' travel to and from work. 29 U.S.C. § 254(a)(1). Under the Portal-to-Portal Act of 1947, an employer may be liable for travel if the employer has agreed to compensation under "an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer . . . ." 29 U.S.C. § 254(b)(1). The General Agreement between Defendant and the International Unit of Operating Engineers contains an express provision which provides compensation for required travel time.

Defendant's liability exists only if the travel time is considered "work" under the FLSA. 29 C.F.R. § 785.34. "Activity must be 'work' to qualify for coverage under the FLSA, and that 'work,' if preliminary or postliminary, will still be compensable under the Portal-to-Portal Act if it is 'integral and indispensable' to the principal activity." *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 371 (3d Cir. 2007). Therefore, "ordinary travel from home to work . . . need not be counted as hours worked *even if the employer agrees to pay for it*." 29 C.F.R. § 785.34 (emphasis added). "An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a

normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime." 29 C.F.R. § 785.35.

The present case differs from "ordinary home to work travel" in that it involves work at remote locations, requiring members of the dredging crew to spend nights away from home. The regulation on travel away from home, 29 C.F.R. § 785.39, states as follows:

> Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days. Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is worktime on Saturday and Sunday as well as on the other days.

29 C.F.R. § 785.39. This regulation fails, however, to discuss travel that is purely voluntary. Both parties rely on a U.S. Department of Labor non-administrator opinion letter dated September 21, 2004. That letter discusses an employer who sent employees to out of town projects that required overnight stays. The employer paid for travel time to and from the location at the beginning and end of the project. The employer also provided a plane ticket for employees to go home during their days off. The question posed to the Department of Labor was whether the employer was required by the FLSA to compensate employees for the time spent voluntarily traveling home on their days off. The pertinent part of the opinion letter states as follows:

> Travel at the employee's own option and for his or her sole convenience need not be considered hours worked under the FLSA. This would be true even though the interim travel was done during hours that were normally part of the employee's workday if, in fact, on the personal travel day the employee's workday had ended before the commencement of such interim transportation.
>
> Accordingly, it is our opinion that the interim travel by the employee at his or her

> own option, and for his or her personal reasons, even though it is at the
> employer's expense, would not be working hours whether it takes place outside
> the employee's regular working hours or during regular working hours but after
> the conclusion of the employee's workday.

Wage and Hour Division, United States Department of Labor, *Compensability of Voluntary Travel*, 2004 WL 5303043, FLSA2004-15NA (Sept. 21, 2004). Therefore, an employee need not be compensated for voluntary travel time even if working at a remote location.

The Court finds that a genuine issue of material fact exists as to whether Plaintiff's travels home while working at remote locations were voluntary. In determining whether Plaintiff's travel was voluntary or not, the true issue is whether Defendant offered to pay employees' living expenses while they were at remote work sites on non-working days, and whether Plaintiff and other employees were aware of that option. If such an option existed and was made known to employees, then the travel time spent driving home from remote work sites could only be classified as "voluntary," and Plaintiff would not be entitled to compensation. If, however, Defendant never offered a per diem to its employees on non-working days, or such a policy existed but was never made known to employees, Plaintiff may be entitled to compensation for the "required" travel time home.

Defendant stresses that employees were offered a per diem amount to compensate living expenses for each day spent away from their official workstations, including non-work days. Therefore, Plaintiff and others like him were not obligated to return home, and Plaintiff's travel was voluntary. Plaintiff disagrees with the classification of his time spent traveling as "voluntary." Plaintiff asserts that he and fellow employees were not offered any per diem for non-working days at remote work sites.

Resolving all ambiguities against the moving party, the Court finds that a genuine issue

of material fact exists. Defendant's only evidence of its reimbursement policy consists of two letters written to Plaintiff's attorney by a senior attorney for Defendant, and a copy of a document titled "Accounting Procedure 15, Travel Allowance and Reimbursement." Defendant's reply brief asserts that the accounting procedure document "is readily available to all TVA employees via TVA's internal website . . . ." The document provided to the Court contains a section on "Reimbursable Subsistence Expenses" which states:

> All charges for lodging, meals, and incidental expenses related to subsistence are reimbursable if permissible under these instructions and applicable Federal Travel Regulation and approved by the supervisor.

Accounting Procedure 15, Travel Allowance and Reimbursement, 5. Defendant's reply brief then directs the Court to 41 C.F.R. § 301-11.21, which is a regulation under the Federal Travel Regulation System. This regulation provides:

> In general, you will be reimbursed as long as your travel status requires your stay to include a non-workday, (e.g., if you are on travel through Friday and again starting Monday you will be reimbursed for Saturday and Sunday), however, your agency should determine the most cost effective situation (i.e., remaining in a travel status and paying per diem or actual expenses or permitting your return to your official station).

41 C.F.R. § 301-11.21(a).

Although the accounting procedure document and federal regulation appear to establish that Plaintiff was entitled to reimbursement for lodging on non-workdays, there is insufficient evidence before the Court to demonstrate that Plaintiff knew or should have known about this policy. Other than a blanket statement by Defendant in its brief, the Court has no evidence before it demonstrating that employees had access to this document or that the policy was ever implemented. The mere existence of a policy does not substantiate its implementation. Moreover, the fact that Defendant did not present evidence of this policy until it filed its reply

7

brief precluded Plaintiff from presenting any contrary evidence related to that policy.

The letters written by Defendant's senior attorney to Plaintiff's attorney were prepared in response to Plaintiff's inquiries about payment for travel time. Defendant's senior counsel states that employees received a per diem on non-work days. These statements are disputed by Plaintiff's affidavit, which states that he traveled home because he "was not going to receive a per diem to stay at the work station." The Court finds that a genuine issue of material fact exists.

If Plaintiff's travel home was voluntary, the Department of Labor opinion letter and the standards on ordinary home to work travel dictate that Plaintiff may not recover. If, however, Plaintiff's travel was not voluntary, he may be able to recover because of the travel away from home regulation. 29 C.F.R. § 785.39. For the foregoing reasons, Defendant's motion for summary judgment is denied.

## II.     Motion for Conditional Certification of an FLSA Collective Action

Since summary judgment has been denied, the Court now considers Plaintiff's motion to make this action an FLSA collective action. Plaintiff seeks conditional certification of the following collective action group:

> (1) all present and former employees of the Defendant Tennessee Valley Authority within the United States who work or worked on a dredging crew within the past ten (10) years immediately preceding the filing of this law suit; and
>
> (2) who were subjected to Defendant's illegal practice of failing to pay full and proper time and one half (overtime) for time spent traveling outside of bulletined working hours or on scheduled days of rest.

Under the FLSA, employees may bring a claim on their own behalf and on behalf of "similarly situated" persons. 29 U.S.C. § 216(b). A collective action under the FLSA permits similarly situated employees to opt-in to the action, unlike the opt-out approach typically utilized under

Federal Rule of Civil Procedure 23. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). Therefore, these similarly situated employees must be notified of the lawsuit. *Id.* First, however, the Court must determine "whether plaintiffs have shown that the employees to be notified are, in fact, 'similarly situated.'" *Id.*

In this case, the parties have agreed that the definition of Plaintiff's proposed collective action group is proper to the extent that the group is composed of present and former employees who worked on a dredging crew. Defendant objects, however, to the ten year time period. A cause of action for unpaid overtime compensation under the FLSA must be brought within two years after the cause of action accrued, or within three years if it was a willful violation. 29 U.S.C. § 255(a). "A new cause of action accrues with each violation of the FLSA." *Noble v. Serco, Inc.*, 2009 WL 3254143, *2 (E.D. Ky. 2009) (citing *Hasken v. City of Louisville*, 234 F. Supp. 2d 688, 691 (W.D. Ky. 2002)). Therefore, the recovery time period is limited to, at most, three years.

Plaintiff urges the Court to apply the doctrine of equitable tolling and allow the ten year period to go forward, at least until discovery is completed. "The doctrine of equitable tolling 'is read into every federal statute of limitation.'" *Hasken v. City of Louisville*, 173 F. Supp. 2d 654, 661 (W.D. Ky. 2001) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "[E]quitable tolling relief should be granted only sparingly." *Amini v. Oberlin College*, 259 F.3d 493, 500 (6th Cir. 2001).

Plaintiff alleges that Defendant intentionally misled employees regarding the availability

9

of compensation for travel, which prevented Plaintiff from discovering his cause of action. Plaintiff acknowledges, however, that he lacks sufficient factual information at this time because discovery has not been completed. Defendant points out that Plaintiff's responses to Defendant's interrogatories indicate that Plaintiff had raised the issue of payment for travel time several times since he first started working. Specifically, the response to Interrogatory #9 states, "The Plaintiff, Douglas Bassett, individually, has been raising this issue since 1989, a period of 19 years prior to his retirement. . . . This policy has existed since 1989 and continues to improperly and illegally exist." Defendant also argues that Plaintiff's allegation of misrepresentation is insufficient to establish equitable tolling because the alleged misrepresentation–that employees were not entitled to travel time compensation–was accurate and did not prevent Plaintiff from discovering his claims.

The Court finds that Plaintiff possessed sufficient information to discover his claims under the FLSA. Plaintiff indicated that he had raised the issue of travel time compensation with his superiors in the past. If anything, these statements show that Plaintiff was at least aware of potential claims for compensation. In addition, the responses he received from Defendant did not prevent him from discovering his rights. The Court agrees with Defendant that these statements may even have served to inform Plaintiff of facts giving rise to his claims. Plaintiff was aware that he was not being paid for travel time. Whether or not he was misled about the availability of a per diem for non-work days does not affect that awareness, nor did it conceal from Plaintiff his ability to bring an FLSA action. Therefore, the Court finds that the class shall be limited to only those individuals who might have FLSA claims within the three-year statute of limitations period.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion for Conditional Certification of an FLSA Collective Action is GRANTED IN PART and DENIED IN PART and Defendant's Motion for Summary Judgment is DENIED.