UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-00039

DOUGLAS BASSETT, on behalf of
himself and all others "similarly situated"                    PLAINTIFF

v.

TENNESSEE VALLEY AUTHORITY                                     DEFENDANT

## MEMORANDUM OPINION

On March 11, 2013, the parties attempted, unsuccessfully, to settle this action. Despite two previous rounds of summary judgment motions, the parties represent that the settlement conference was unsuccessful because of outstanding issues of law. As a result, the Court ordered simultaneous briefing on the remaining legal issues. The Plaintiffs submitted their brief and a response. (Pls.' Br., Docket Number ("DN") 148; Pls.' Resp., DN 150.) Likewise, the Defendant also filed a brief and response. (Def.'s Br., DN 147; Def.'s Resp., DN 150.) The remaining legal issues are now ripe for adjudication. The Court rules on each issue below.

I.

In *Bassett v. TVA*, No. 5:09-CV-00039, 2010 WL 716094 (W.D. Ky. Feb. 22, 2010), and *Bassett v. TVA*, No. 5:09-CV-00039, 2013 WL 665087 (W.D. Ky. Feb. 22, 2013), the Court set out the facts underlying this action. At this point, knowledge of the facts is presumed. Suffice it to say that this is a collective action arising under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), in which Douglas Bassett ("Bassett") and the remaining opt-in Plaintiffs allege that Defendant Tennessee Valley Authority ("TVA") failed to pay overtime wages for time the Plaintiffs spent traveling to and from certain remote projects that they were assigned to by TVA.

Through simultaneous briefings, the parties identified four unresolved issues of law. In

1

the order addressed by the Court, these issues are:

1. Whether the FLSA statute of limitations, 29 U.S.C. § 255, is applicable to the Plaintiffs' claims or whether it should be equitably tolled so as to extend the limitations period.

2. Whether the travel regulation found at 29 C.F.R. § 785.39 limits the Plaintiffs' potential recovery to travel time occurring during regular working hours on working days and corresponding hours on nonworking days or whether the Plaintiffs may recover for travel occurring outside of those periods.

3. Whether the Plaintiffs can recover "gap time" under the FLSA.

4. Whether TVA can offset any wage it may owe against any "premium" wage it paid the Plaintiffs in excess of the FLSA's requirements.

Each issue is addressed below. Resolution of these issues does not dispose of the entire action, however. As a result, the parties will proceed to trial or, at their request, to further settlement discussions.

## II.

The first issue before the Court is whether the FLSA's statute of limitations is applicable to the Plaintiffs' claims or whether it should be equitably tolled. The FLSA contains a two-year statute of limitations. *See* 29 U.S.C. § 255(a). The limitations period expands to a total of three years if the FLSA violation was willful. *Id.* The Court makes no finding as to whether the two- or three-year limitations period applies. The "willfulness" of any FLSA violation by TVA is a factual determination to be made at trial. In order to analyze the full scope of the Plaintiffs' potential claims, the Court assumes, but does not expressly find, that that the three-year period applies for the purposes of this opinion.

In a FLSA action proceeding collectively, like the case *sub judice*, each plaintiff's action commences – for the purposes of the statute of limitations – on the date on which he or she files a written consent to opt into the action. *Id.* § 256; *Frye v. Baptist Mem'l Hosp.*, 495 F. App'x 669, 675-76 (6th Cir. 2012) (finding the language of 29 U.S.C. § 256 to be "unambiguous").

Bassett, as lead plaintiff, filed his notice to opt-in on April 29, 2009. (*See* Bassett Notice, DN 4.) If the three-year statute of limitations applies, he can recover for any FLSA violation occurring after April 29, 2006. By contrast, other Plaintiffs did not opt into the action until sometime after Bassett. For example, a number of Plaintiffs opted-in on October 14, 2011 (the "October 2011 Plaintiffs"). (*See* Opt-in Notices, DN 83.) Should the three-year limitations period apply, these Plaintiffs can only recover for FLSA violations occurring between October 14, 2008, and October 14, 2011. This proves problematic for the October 2011 Plaintiffs, however, because enforcement of the statute of limitations would eliminate a portion of their claims. By the time they opted-in, many of the October 2011 Plaintiffs had been retired from TVA for a number of years or the alleged FLSA violations occurred prior to October 14, 2008. In an attempt to remedy this potential bar, the Plaintiffs advance two arguments. First, they claim that TVA has waived any defense arising under the statute of limitations by failing to assert it in either of the two prior motions for summary judgment. Second, even if not waived, they argue that the statute of limitations should be equitably tolled so that each opt-in Plaintiff takes Bassett's opt-in date, April 29, 2009, as the date on which his action commenced.

**a.**

The Plaintiffs argue that TVA waived the statute of limitations defense by failing to assert it in a timely manner. The Court finds that TVA has not waived the applicable statute of limitations. The statute of limitations was pleaded as an affirmative defense in TVA's initial answer (Answer, DN 6, p. 5) and in the amended answer (Am. Answer, DN 103, p. 5). Accordingly, the Plaintiffs were on notice that TVA might assert such a defense and are not prejudiced by its consideration at this stage.

Federal Rule of Civil Procedure 8(c) requires that a defendant "must affirmatively state

3

any . . . affirmative defense, including . . . statute of limitations." "[A] defense based upon a statute of limitations is waived if not raised in the first responsive pleading." *Haskell v. Washington Tp.*, 864 F.2d 1266, 1273 (6th Cir. 1988) (citations omitted). In the present case, the Plaintiffs do not argue that TVA failed to comply with Rule 8(c). In its initial and subsequent answers, TVA affirmatively defended that "[s]ome or all of the claims asserted in the Complaint are barred by operation of the statute of limitations set forth in 29 U.S.C. § 255." (Answer, DN 6, p. 5.) Furthermore, TVA contended that it did not willfully violate the FLSA and that the two-year, rather than the three-year, statute of limitations should apply. (*Id.*) Accordingly, the Plaintiffs were on notice early in this litigation that TVA had a potential statute of limitations defense. Additionally, through supplemental briefs the Plaintiffs have been afforded an opportunity to respond to TVA's statute of limitations defense. *See Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997) ("Sushka's failure to raise either affirmative defense did not result in surprise or unfair prejudice to Smith, especially since the district court extended the trial date in order to give Smith the opportunity to fully respond to and brief the issues.").

Despite having notice and an opportunity to respond, the Plaintiffs argue that TVA waived the defense by failing to assert it in either of the two earlier motions for summary judgment. In other words, they argue that TVA was obligated to raise this defense as soon as possible and that failure to do so has prejudiced the Plaintiffs. While TVA could have been more diligent in raising this defense, the Court will not preclude it from doing so at this stage. A defense based on the statute of limitations can be raised, even up until the point of trial, "so long as it [is] properly asserted in the answer and not thereafter affirmatively waived." *Long v. Howard Univ.*, 550 F.3d 21, 24 (D.C. Cir. 2008). The Plaintiffs have not shown that TVA affirmatively waived the statute of limitations defense at any point, and other courts have found

4

that substantial delays alone are not grounds for finding waiver. *See Pondexter v. Dep't of Housing & Urban Dev.*, 324 F. App'x 169 (3d Cir. 2009) (district court did not abuse its discretion by allowing defendant to assert statute of limitations defense more than three years after the defense was included in an amended answer); *Daingerfield Island Protective Soc. v. Babbitt*, 40 F.3d 442 (D.C. Cir. 1994) (defendant did not waive statute of limitations defense by moving for summary judgment more than six years after the case commenced where the defense was included in the answer); *Bryant v. Wyeth, Inc.*, 816 F. Supp. 2d 329 (S.D. Miss. 2011) (defendant did not waive statute of limitations defense where it was included in the answer and was raised in a "pragmatically sufficient time"); *Trangradi v. Baptist Mem'l Hosp.*, No. 1:10-CV-01115-JDB-egb, 2012 WL 2681806 (W.D. Tenn. July 6, 2012) (defendant did not waive statute of limitations defense where it was included in the answer even though the defendant waited almost seventeen months to assert it). Accordingly, the Court will not deem the statute of limitations defense waived simply because TVA delayed in raising it. The defense was affirmatively pleaded early in this action, giving the Plaintiffs sufficient notice that it might be raised.

The Plaintiffs' final argument in favor of waiver is that TVA's delay in raising the statute of limitations defense prejudiced the Plaintiffs by causing them to incur additional attorneys' fees. A few courts have recognized additional attorneys' fees and expenses as a prejudice resulting from the tardy assertion of a statute of limitations defense. *See Estes v. Kentucky Utils. Co.*, 636 F.2d 1131, 1134 (6th Cir. 1980); *McGraw v. Matthaei*, 388 F. Supp. 84, 88-89 (E.D. Mich. 1972). But those cases, like *McGraw*, that have deemed the defense waived because of prejudice have done so when a party failed to include the defense in its initial pleadings and sought to add it to the answer late in the litigation. *See McGraw*, 3889 F. Supp. at 88-89

5

(denying plaintiff leave to amend answer to counterclaim in order to assert a statute of limitations defense because the plaintiff failed to assert that defense in its first answer filed two years prior to the motion). As discussed above, TVA asserted the statute of limitations defense in its first answer to the Plaintiffs' claims. Accordingly, this case is distinguishable from *McGraw* and any attorneys' fees and expenses incurred rebutting the statute of limitations defense are not prejudicial because the Plaintiffs have been on notice of the defense from the commencement of this litigation. In total, TVA has not waived its ability to defend this action based on the statute of limitations found in 29 U.S.C. § 255.

### b.

In the absence of waiver, the Plaintiffs also argue that the statute of limitations should be equitably tolled so that every Plaintiff takes Bassett's opt-in date, April 29, 2009, as the date on which his cause of action commenced. Based on the analysis conducted below, the Court concludes that a genuine dispute of material fact remains that precludes the Court from determining whether, as a matter of law, the statute of limitations should be equitably tolled. Conflicting testimony exists on both sides as to whether the Plaintiffs were threatened with termination in the event that they sought payment for travel and overtime under the FLSA. If the Court, as finder of fact in the scheduled bench trial, finds that TVA threatened the Plaintiffs with termination, this may be an extraordinary circumstance that stood in the way of the Plaintiffs exercising their rights under the FLSA.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Pace v. DiGugilelmo*, 544 U.S. 408, 418 (2005); *see Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010) (applying the two-part *Pace* test). It was recently

recognized that the five-factor test developed in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988), and historically used by the Sixth Circuit to analyze equitable tolling claims has been abrogated by the two-part *Pace* test. *Patterson v. Lafler*, 455 F. App'x 606, 608-09 n.1 (6th Cir. 2012) (recognizing that in light of *Holland*, which followed the *Pace* test, it was unnecessary to discuss the five factors developed in *Andrews*). Accordingly, in deciding whether to equitably toll the statute of limitations in this action, the Court will apply the *Pace* test. In conjunction with the *Pace* test, the Court still recognizes that equitable tolling should be granted "but sparingly, and 'only when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Id.* (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 560-61 (6th Cir. 2000)).

Early in this litigation Bassett moved to equitably toll the statute of limitations for his individual claims. The Court denied his request, finding that he "possessed sufficient information to discover his claims under the FLSA." *Bassett v. TVA*, 2010 WL 716094, at *9. In a similar manner, the Court finds that the Plaintiffs had sufficient information to discover their FLSA claims. For the purposes of the FLSA, "each violation gives rise to a new cause of action" and "each failure to pay overtime begins a new statute of limitations period as to that particular event." *Knight v. Columbus, Ga.*, 19 F.3d 579, 582 (11th Cir. 1994); *Noble v. Serco, Inc.*, No. 3:08-76-DCR, 2009 WL 3254143, at *2 (E.D. Ky. Oct. 7, 2009) ("A new cause of action accrues with each violation of the FLSA.") (citing *Hasken v. City of Louisville*, 234 F. Supp. 2d 688, 691 (W.D. Ky. 2002)).

Deposition testimony confirms that the Plaintiffs had sufficient information to discover a FLSA violation before they opted into this action. Robert Rodocker testified that the issue of overtime wages for travel was discussed regularly with Larry Radford, the supervisor in charge

of TVA's Project Services division. (Rodocker Depo., DN 147-2, p. 144:19-24.) Plaintiffs Bassett, Warren, Miller, Bagwell, Baird, Goodman, and Holder were typically at the meetings when this issue was discussed. (*Id.* at pp. 145:3-146:18.) During one of the meetings Larry Radford and Ken Lowery, another TVA manager, discussed payment for travel time. (*Id.* at pp. 142:19-143:17.) Lowery discussed an email he sent to Radford containing a policy showing that the Plaintiffs should be paid for their travel time. Rodocker requested and received a copy of that email. (*Id.* at p. 143:16-17.) This email was produced during discovery. (*See* Feb. 15, 2008 Email, DN 147-1.) It is dated February 15, 2008, which is more than one year before Bassett filed this action against TVA and more than three years before the October 2011 Plaintiffs filed their opt-in notices.

Other deposition testimony is similar to that offered by Rodocker. For instance, Bobby Holder, who worked for TVA between 2005 and 2008, (Holder Depo., DN 111-19, pp. 21:25-22:3), testified that he had a conversation with Ken Lowery *before* going to work for TVA to the effect that he was supposed to be paid for his travel time but would not be because of a decision by Larry Radford. (Holder Depo., DN 147-3, p. 52:20-53:1.) Similarly, William Luffman either spoke with or overheard conversations by David Miller and Robert Bagwell about failing to receive the proper travel or overtime pay. (Luffman Depo., DN 147-4, pp. 43:17-45:19.) Some of those conversations occurred in 2006, when Miller served as Luffman's supervisor. (*Id.* at p. 44:12-25.) Finally, David Miller discussed the issue of travel and overtime pay with Larry Radford "numerous times." (Miller Depo., DN 147-5, p. 31:2-4.) In fact, Miller and Bassett discussed not receiving proper payment on an ongoing basis since 1991. (*Id.* at p. 36:12-17.) In all, the record reveals that the Plaintiffs were aware that they were not being paid for certain travel or overtime. Moreover, they were aware of nonpayment long before Bassett filed this

action in 2009. Accordingly, the Court finds that the Plaintiffs had sufficient information to discover their FLSA claims.

Although the Plaintiffs had sufficient information to discover their claims, an extraordinary circumstance beyond their control may have prohibited them from exercising their rights under the FLSA. What constitutes an extraordinary or exceptional circumstance sufficient to justify equitable tolling is a matter of debate. For example, in the context of an ADEA violation, the Second Circuit has held that an extraordinary circumstance is one in which a plaintiff can "show that it would have been *impossible* for a reasonably prudent person to learn that his discharge was discriminatory." *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir. 1985) (citations omitted). More specifically in the context of FLSA actions, it has been held that a defendant's "failure to disclose contact information [for potential plaintiffs] is not an 'exceptional circumstance' warranting equitable tolling." *Putnam v. Galaxy 1 Marketing, Inc.*, 276 F.R.D. 264, 276 (S.D. Iowa 2011). But, it is an extraordinary circumstance where "the defendant concealed from the plaintiff the cause of action." *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 269 (E.D.N.Y. 2008) (citation omitted). Overall, "[t]he circumstances under which equitable tolling has been permitted are . . . quite narrow. [It] has been allowed 'in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" *Chao v. Virginia Dep't Transp.*, 291 F.3d 276, 283 (4th Cir. 2002) (quoting *Irwin v. Dep't of Veterans*, 498 U.S. 89, 96 (1990)).

In the present case, the Plaintiffs claim that extraordinary circumstances justify equitable tolling. In particular, they alleged that TVA's managers threatened to terminate their employment

if they continued to seek payment for travel and overtime. (*See, e.g.*, Baird Depo., DN 111-11, pp. 23:17-24:1, 25:8-25.) It is these threats of termination, intimidation, and retaliation that the Plaintiffs believe provide a firm basis for equitably tolling the statute of limitations. If true, it appears to the Court that the threat of termination and retaliation could constitute an extraordinary circumstance that prevented the Plaintiffs from exercising their rights under FLSA. But TVA has argued during this litigation that no such threats were made. Accordingly, the Court finds that a genuine dispute of material fact remains regarding the retaliatory threats alleged by the Plaintiffs. If it is determined at trial that these threats were actually made, equitable tolling may be warranted. The Court reserves ruling on the issue of equitable tolling for resolution at trial because of genuine disputes of material fact. In any event, until the Court hears all testimony surrounding alleged threats of termination it does not feel that it could rule as a matter of law on this issue. Frankly, the Court is uncertain as to this issue until it hears this testimony and the context.

## II.

The second issue before the Court involves the interpretation and application of the Department of Labor travel regulation issued at 29 C.F.R. § 785.39. Set forth in its entirety the regulation provides:

> **Travel away from home community.**
>
> Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days. Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is worktime on Saturday and Sunday as well as on the other days. Regular meal period time is not counted. As an enforcement policy the Divisions will not consider as worktime that time spent in travel away from home outside of regular working hours as a passenger on an

airplane, train, boat, bus, or automobile.

29 C.F.R. § 785.39.  This regulation is at the heart of the present litigation and the competing interpretations advocated by the parties will substantially impact the Plaintiffs' potential recovery.

The parties offer two distinct interpretations of 29 C.F.R. § 785.39.  According to TVA, the regulations places an employee's travel time into one of three categories.  First, an employee's travel time is compensable "worktime" when the employee travels during his regular working hours on working days.  Second, an employee's travel time is also compensable "worktime" when the employee travels on nonworking days during hours that correspond to his regular working hours on working days.  Third, an employee's travel time is *not* compensable "worktime" if it falls outside of the periods prescribed by the first two categories.  In the present case, the typical plaintiff worked four ten-hour shifts, from 7:00am to 5:00pm, Monday through Thursday.  Under TVA's interpretation of the regulation, the Plaintiffs accrued compensable travel time if their travel cut across the hours of their regular working day.  The Plaintiffs also have compensable travel time for travel occurring between 7:00am and 5:00pm on Fridays, Saturdays, and Sundays.  But, if the Plaintiffs traveled between 5:00pm and 7:00am on any day, working or nonworking, that time was not compensable.  Following TVA's interpretation, travel time occurring between 5:00pm and 7:00am did not cut across either the employee's regular working hours on working days or correspond to regular working hours on  nonworking days and was not compensable under 29 C.F.R. § 785.39.

The Plaintiffs offer their own interpretation of 29 C.F.R. § 785.39.  They do not dispute that an employee has compensable travel time when his travel cuts across his regular working hours on working days.  They also agree that compensable travel time occurs when an employee

11

travels on nonworking days during regular working hours. Unlike TVA, however, the Plaintiffs argue that the regulation allows for the recovery of compensable travel time during the period outside of these two categories. Their position rests on their application of the last sentence in 29 C.F.R. § 785.39: "As an enforcement policy the Divisions will not consider as work that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile." According to the Plaintiffs, by not compensating an employee for time spent as a passenger on a common carrier when traveling outside of regular working hours, the regulation implicitly authorizes compensable travel time outside of regular working hours when the employee is the *driver*. In the present case the Plaintiffs individually drove themselves to the various worksites. They claim that the last sentence of 29 C.F.R. § 785.39 allows an employee to recover compensable travel time when he has no choice but to drive himself to and from a worksite outside of regular working hours.

Although the Plaintiffs' interpretation of 29 C.F.R. § 785.39 is not unreasonable, the Court declines to follow it for two reasons. First, the last sentence in 29 C.F.R. § 785.39 is stated in the negative. That is, it states what will *not* be count as compensable travel time: time spent traveling as a passenger on a common carrier outside of regular working hours. From this negative, the Plaintiffs would read an implicit positive; so long as an employee drives himself, he is entitled to compensation for all travel time occurring outside of regular working hours. The Court finds that the last sentence of 29 C.F.R. § 785.39 will not withstand the Plaintiffs' stretched interpretation. A more internally consistent interpretation is as follows.

First, the regulation states that travel time is compensable so long as it cuts across regular working hours. Second, it provides that travel time is compensable on nonworking days so long as the travel occurs during hours that correspond to the employee's regular working hours.

12

Finally, under the last sentence of 29 C.F.R. § 785.39, travel time, even if occurring on nonworking days during hours that correspond to the employee's regular working hours, is not compensable if the employee travels on a common carrier. Rather than creating the implicit rule that an employee who drives himself at any time outside of regular working hours is entitled to compensation, this sentence merely creates an exception to the travel-on-nonworking-days-during-regular-working-hours rule. This interpretation avoids the implicit creation of a positive right and is consistent with the rest of the regulation.

To recap, 29 C.F.R. § 785.39 states that travel time is compensable when it cuts across: 1) an employee's workday and 2) an employee's regular working hours on nonworking days. Travel time is *not* compensable when: 1) it occurs outside of the employee's regular working hours, whether on working or nonworking days, or 2) the employee is a passenger on a common carrier and his travel occurs during his regular working hours on nonworking days.

The Court declines to follow the Plaintiffs' interpretation of 29 C.F.R. § 785.39 for an additional reason. The Plaintiffs have been unable to point the Court to a single case that supports their application or interpretation of 29 C.F.R. § 785.39. On the contrary, cases cited by TVA and found by the Court support the interpretation that travel time is only compensable if occurring during regular working hours on normal working days or corresponding hours on nonworking days. The only other district court in the Sixth Circuit to address 29 C.F.R. § 785.39 agreed with this interpretation. *See Dekker v. Constr. Specialties of Zeeland, Inc.*, No. 1:11-CV-252, 2012 WL 726741, at *4 (W.D. Mich. Mar. 6, 2012) ("The FLSA requires a company to pay for overnight, out-of-town travel when it cuts across the employee's workday. However, the FLSA does not generally require a company to pay for overnight, out-of-town travel outside of regular work hours."). Even courts allowing plaintiffs to recover under 29 C.F.R. § 785.39 have

13

agreed with this Court's interpretation. *See Mendez v. Radec Corp.*, 232 F.R.D. 78, 86 (W.D.N.Y. 2005) (holding that plaintiffs had "'normal working hours,' that they traveled to out-of-town job sites during those hours, and that they were not compensated for that travel time, in violation of the FLSA and 29 C.F.R. § 785.39").

The Court also pauses to briefly address the two cases most heavily relied upon by the Plaintiffs: *Treadway v. BGS Constr., Inc.*, No. 5:06-cv-00191, 2007 WL 2815439 (S.D. W.Va. Sept. 25, 2007) and *Troutt v. Stavola Bros., Inc.*, 905 F. Supp. 295 (M.D.N.C. 1995). First, the Court finds *Treadway* to be inapposite because of incomplete analysis by the court. The court held that "pursuant to 29 C.F.R. § 785.39, [the defendant] must pay Plaintiffs for their travel time from their home . . . to [the defendant's] distant worksites, when such travel requires an overnight stay." *Treadway*, 2007 WL 2815439, at * 4. The court did not discuss whether that travel occurred on working days or nonworking days. Furthermore, the court did not discuss the hours during which the travel occurred. The Court does not imply the *Treadway* was wrongly decided. The analysis in the opinion is simply too incomplete to be informative in this case. As for *Troutt*, that case actually supports the Court's interpretation of 29 C.F.R. § 785.39. The court held that when the plaintiff traveled away from home overnight on weekends as part of a racecar maintenance crew, "Plaintiff may be compensated for travel time *only* during Plaintiff's normal working hours, 8:00 a.m. to 5:00 p.m." *Troutt*, 905 F. Supp. at 301 (emphasis added). The court clearly explained that the plaintiff could only receive compensation for travel time on nonworking days if such travel occurred during his regular working hours.

Finally, a review of secondary sources informed the Court decision not to follow the Plaintiffs' interpretation of 29 C.F.R. § 785.39. The host of secondary sources reviewed by the Court adopts and confirms the interpretation advanced by TVA. *See* 48B Am. Jur. 2d *Labor &*

14

*Labor Relations* § 3239 (2013) ("Time spent traveling away from home, including overnight travel, is time worked when it cuts into an employee's workday, since the employee is substituting travel for other duties.  Further, such time is considered hours worked not only on regular working days during normal working time, but also during the corresponding hours of nonworking days."); Les A. Schneider & J. Larry Stine, *Wage & Hour Law: Compliance & Prac.* § 6:38 (2013) ("[T]ravel time outside the regularly scheduled hours is not compensable. For example, an employee who normally works from 9:00 a.m. to 5:00 p.m. Monday through Friday and travels on Saturday from 2:00 p.m. to 8:00 p.m. would be compensated for three hours (2:00 p.m. to 5:00 p.m.)."); 1 Mark A. Rothstein, *et al.*, *Employment Law* § 4.5 (4th ed. 2013) ("Overnight travel is compensable if it occurs during regular working hours, but not otherwise, unless the employee is required to perform work while traveling."); Bradd N. Siegel & John M. Stephen, *Ohio Employment Pracs. Law* § 11:15 (2013) ("[T]ravel that keeps an employee away from home overnight is work time only when it cuts across the employee's workday."); Steven C. Kahn & Barbara B. Brown, *Legal Guide to Human Resources* § 16.57 (2013); Judith M. Kline & Brent A. Olson, *Cal. Bus. Law Deskbook* § 16:15 (2012) (describing differences between federal and California wage and hour laws and, for 29 C.F.R. § 785.39 providing the example that "if an employee regularly works from 8:00 a.m. to 4:00 p.m. on Monday through Friday, travel time during these hours is work time on the weekends as well as on the other days, but travel outside these hours (on any of the seven days) is not compensable"); Merrick T. Rossein, *Employment Law Deskbook for Human Resources Professionals* § 6.23 (2012) ("Travel on weekends or holidays that falls within the normal working hours will also be considering working time.  Time spent traveling outside of normal working hours will not be considered working time."); Stephen B. Harris & Lawrence Peikes, *Conn. Prac., Employment*

15

*Law* § 5:3 (2012) ("When an employee is required to take an overnight trip, then all time spent traveling during the hours corresponding to the employee's normal working hours must be counted as time worked. Even travel hours on Saturdays, Sundays or holidays that correspond to the employee's normal working hours on other days of the week must be counted as time worked. However, the U.S. Department of Labor will not treat as compensable hours the time an employee spends traveling away from home to the extent it exceeds his or her regular working hours."); William C. Martucci, *Mo. Prac., Employment Law & Prac.* § 8:42 (4th ed. 2012) ("Travel that keeps an employee away from home overnight is considered work time, except that the regulations do not consider time spent in travel outside of regular work hours as work time."); *La. Prac., Employment Law* § 4:9 (2012-13 ed.) ("Time performing the following activities is not considered compensable: Travel time . . . outside regular working hours unless productive work is accomplished during travel.").

In total, both case law and secondary sources follow the interpretation of 29 C.F.R. § 785.39 advanced by TVA. Although the regulation appears to turn logic on its head and create differences without distinction, the Court declines to depart from the interpretation of 29 C.F.R. § 785.39 followed by other courts and commentaries examining the regulation. Based on the foregoing analysis of 29 C.F.R. § 785.39, the Court holds as follows: If a Plaintiff is found to be entitled to recover for travel time in this case, he can recover only for travel that occurred during regular working hours on working days or during corresponding hours on nonworking days. If travel occurred partly inside and partly outside those hours, a Plaintiff can recover only for the travel time that occurred inside those hours.

### III.

The third issue before the Court involves the concept known as "gap time." Two types of

gap time claims generally arise under the FLSA. First, a "pure gap time" claim is one "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked[.]" *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013). In other words, a pure gap time claim does not involve a claim for overtime wages. Rather, the plaintiff seeks to recover some portion of his or her normal wage that has not been paid for the normal forty-hour workweek. Second, an "overtime gap time" claim is one "in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Id.* In addition to seeking overtime, the plaintiff is seeking compensation for unpaid straight time that accrued during the standard forty hour workweek.

For pure gap time claims most courts hold than "[a]n employee who has not worked overtime has no claim under the FLSA for hours worked below the 40-hour overtime threshold, unless the hourly wage falls below the federal minimum wage." *Id.* (citations omitted); *Espenscheid v. DirectSate USA, LLC*, No. 09-cv-625-bbc, 2011 WL 10069108, at *11 (W.D. Wis. Apr. 11, 2011). This outcome is in accordance with the FLSA's statutory text. The FLSA sets a federal minimum wage. *See* 29 U.S.C. § 206(a)(1). It then establishes forty hours as the standard workweek. *Id.* § 207(a)(2). An actionable FLSA wage and hour violation only occurs where an employee is paid less than the minimum wage for forty hours of work. *Espenscheid*, 2011 WL 10069108, at *11 ("[I]f an employee's average wage exceeds the legal minimum, then no minimum wage violation has occurred[.]"); *Taylor v. McLane Foodservice, Inc.*, No. 12-2697-JWL, 2013 WL 943531, at *7 (D. Kan. Mar. 11, 2013) ("[W]hen [the] average hourly rate is at or above the federal minimum wage level, no violation of the FLSA has occurred."). So long as the employee is paid at least the minimum wage and does not work overtime, there is no FLSA wage and hour violation. This is true even if the employee is entitled to greater compensation under an

17

employment contract or state minimum wage laws. "In this way federal law supplements the hourly employment arrangement with features that may not be guaranteed by state laws, without creating a federal remedy for all wage disputes . . . . For such claims there seems to be no lack of a state remedy, including a basic contract action." *Lundy*, 711 F.3d at 116.

For overtime gap time claims, some courts have allowed recovery of unpaid straight time in excess of the minimum wage when a plaintiff also seeks payment of overtime wages. *See Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263 (4th Cir. 1996). In other words, even if there has been no minimum wage violation, court have allowed plaintiffs to recover unpaid wages in excess of the minimum wage where they also seek overtime compensation. The reasoning underlying these cases, including *Monahan*, was recently rejected by the Second Circuit. *See Lundy*, 711 F.3d at 115-17. In *Lundy* the court held that the FLSA does not allow recovery of straight time just because the overtime wage provision has been violated. *Id.* The Western District of Wisconsin cogently summarized the reasons for disallowing recovery of straight time as part of an overtime wage claim:

> Section 215 of the FLSA lists "prohibited acts" as being a violation of § 206 (minimum wage provision) [and] § 207 (maximum hours provision) . . . . It does not include in the list a violation for failure to pay straight or gap time wages or the overall compensation anticipated by an employment agreement. In addition, the relief afforded employees aggrieved by violation of § 206 or § 207 is limited to "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The statute makes no mention of relief in the form of unpaid regular wages for a violation of the maximum hours provision. Stated simply, the FLSA provides no avenue for the recovery of straight-time pay.

*Espenscheid*, 2011 WL 10069108, at *13.

In the present case, the Court agrees with the reasoning and the statutory analysis underlying *Lundy* and *Espenscheid*. The FLSA provides no cause of action for the recovery of straight time in excess of the minimum wage, even when the plaintiff seeks payment of overtime

18

wages. It should be noted that the Plaintiffs did not respond to the TVA's argument on this issue and appear to implicitly agree that the FLSA does not allow the recovery of straight time so long as they were paid the minimum wage.

### IV.

The final issue before the Court is whether TVA may be entitled to a set off of any "premium" wage it paid the Plaintiffs in excess of the FLSA's requirements. The parties do not dispute this issue, and both agree that TVA may be entitled to an offset on sufficient proof. In *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580 (6th Cir. 2002), the Sixth Circuit held that employers were entitled to an offset of any premium wage they paid their employees in excess of the FLSA's overtime requirements. For all hours worked in excess of forty in a given workweek, the FLSA requires employers to compensate their employees at "a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(2). Of course, under some employment arrangements employers may compensate their employees at higher overtime rates. Where an employee in such circumstances files an overtime wage claim under FLSA, the employer is entitled to offset the premium wage against the time-and-a-half wage required by statute. *See* 29 U.S.C. § 207(h)(2) (stating that contract-based payments, overtime paid for hours worked less than 40, and premium payments on holidays may be offset against the FLSA's time-and-a-half overtime requirement). There is no dispute among the parties on this point.

The parties also agree that TVA bears the burden of proving that premium payments were made. Furthermore, the parties agree that premium payments may only offset in the pay period in which they were made. Thus, any premium payment that offsets the Plaintiffs' overtime wage claim in any particular period may not be applied to similar claims in another period.

19

## CONCLUSION

Upon their inability to settle this action, the Court ordered the parties to brief the four remaining legal issues. The Court has ruled upon those issues in the foregoing analysis but reserved ruling on the equitable tolling of the statute of limitations in light of genuine disputes of material fact. At any trial of this action the Court will apply its rulings on these issues in a manner that is consistent with the foregoing analysis.